UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                                    CHAPTER 13

Constance M. Westrom                                      CASE NO. 11-35984

                            Debtor.                       NOTICE OF HEARING AND MOTION FOR
_____                  RELIEF FROM AUTOMATIC STAY (REAL
                                                          PROPERTY)

TO:   The Debtor and the other entities specified in Local Rule 9013-3(a).

　　　1.　　　The Bank of New York Mellon   fka The Bank of New York, as Trustee for the

Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-19CB, Mortgage Pass-through

Certificates, Series 2005-19CB ("Movant"), hereby moves this Court for the relief requested

below and gives notice of hearing.

　　　2.　　　The Court will hold a hearing on this motion on July 24, 2012 at 10:30 AM, or as

soon thereafter as counsel can be heard, in Courtroom 2A, at the United States Courthouse, at 316

Robert St N, in Saint Paul, Minnesota.

　　　3.　　　Any response to this motion must be filed and served not later than July 19, 2012,

which is five (5) days before the time set for the hearing (including Saturdays, Sundays and

holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE

COURT MAY GRANT THE MOTION WITHOUT A HEARING.

　　　4.　　　This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334,

Fed. R. Bankr. P. 5005 and Local Rule 1070-1.   This proceeding is a core proceeding.   The

petition commencing this chapter 13 case was filed on September 23, 2011.   The case is now

pending in this Court.

　　　5.　　　This motion arises under 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001.   This motion

is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 - 9019-1(d).   Movant requests relief

from the automatic stay with respect to certain real property of the Debtor(s) having an address of

26353 County Road 4, Elbow Lake, Minnesota 56531 (the "Property"), for all purposes allowed

by the Note (defined below), the Mortgage (defined below), and applicable law, including but not

limited to the right to foreclose.   The facts and circumstances supporting this Motion are set forth

in the Affidavit in Support of the Motion for Relief from Automatic Stay filed contemporaneously

herewith (the "Affidavit").

      6.     A Chapter 13 Plan was confirmed on February 23, 2012.

      7.     The Debtor(s) has/have executed and delivered or is/are otherwise obligated with

respect to that certain promissory note in the original principal amount of $322,400.00 (the

"Note").   A copy of the Note is attached hereto as Exhibit "A".   Movant is an entity entitled to

enforce the Note.

      8.     Pursuant to that certain Mortgage dated March 24, 2005, filed for record in the

office of the County Recorder on March 14, 2011 as Document Number 165885 (the "Mortgage"),

all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note

and the Mortgage are secured by the Property.   A copy of the Mortgage is attached hereto as

Exhibit "B".

      9.     All rights and remedies under the Mortgage have been assigned to the Movant

pursuant to that certain assignment of mortgage, a copy of which is attached hereto as Exhibit "C".

      10.    It is axiomatic that any secured property as to which a debtor has filed a written statement

of intention to surrender is not necessary to an effective reorganization.

      11.    The legal description of the Property is:

That part of Government Lot 2 or the Northwest Quarter of the Southwest Quarter of
Section 9, Township 129 North, Range 42 West, Grant County, Minnesota, described as
follows: Beginning at the intersection of Trunk Highway No. 79 and State Aid Road No. 4;
thence North 28 degrees 56 minutes East 1273.5 feet along the center line of said State
Road No. 4; thence North 69 degrees 49 minutes West 63 feet to the place of beginning;

thence North 69 degrees 49 minutes West 767 feet, to the waters edge; thence South 60 degrees 19 minutes East 12 feet; thence North 68 degrees 26 minutes East 38 feet; thence South 74 degrees 34 minutes East 181 feet; thence South 65 degrees 4 minutes East 85 feet; thence South 38 degrees 19 minutes East 300 feet; thence South 15 degrees 49 minutes East 161 feet; thence South 13 degrees 41 minutes 58 feet; thence South 59 degrees 11 minutes West 237 feet to the point on the waters edge; thence South 89 degrees 19 minutes East 161 feet; thence North 28 degrees 26 minutes East 250 feet; thence North 20 degrees 41 minutes East 145 feet; thence North 26 degrees 41 minutes East 233 feet to the place of beginning.

12.     As of March 23, 2012, the outstanding amount of the Obligations less any partial payments or suspense balance is $297,510.18.

13.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $726.00 in legal fees and costs.   Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

14.     The following chart sets forth the number and amount of post petition payments due pursuant to the terms of the Note that have been missed by the Debtor(s) as of March 23, 2012:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 4 | December 2011 | March 2012 | $2,373.45 | $9,493.80 |
| | | | | |

Total:   **$9,493.80**

15.     The current tax-assessed value of the Property is $182,500.00.

16.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in order of priority are:   (i) Movant ($297,510.18); (ii) Bremer Bank ($60,000.00).

17.     Cause exists for relief from the automatic stay for the following reasons:

(a)   Movant's interest in the Property is not adequately protected.

(b)   Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.

Dated: July 2, 2012

**WILFORD, GESKE & COOK P.A.**

/e/ Orin J. Kipp
Orin J. Kipp, #0390438
Attorneys for Movant
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
(651) 209-3300

LOAN NO ▮▮▮▮▮▮▮                                          MIN N(

# NOTE

MARCH 24        , 2005              Woodbury                        MN
[Date]                              [City]                          [State]

26353 County Road 4
Elbow Lake, MN 56531
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 322,400.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**ADVISOR'S MORTGAGE, LLC,**
**LIMITED LIABILITY COMPANY**                                      . I will make
all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       **5.875  %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1ST**     day of each month beginning on   **MAY 1**        , **2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **APRIL 1**        , **2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**5270 WEST 84TH STREET, SUITE #120 BLOOMINGTON, MN. 55437**
                                        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,907.12**            .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE  FIXED  RATE  NOTE - Single  Family - Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT  FORM  3200  1/01

EXHIBIT A

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Constance M. Westrom                       -Borrower                                              -Borrower

Social Security Number ▬▬▬▬▬▬          Social Security Number _____

_____ (Seal)                    _____ (Seal)
                                          -Borrower                                              -Borrower

Social Security Number _____          Social Security Number _____

*[Sign Original Only]*

PAY TO THE ORDER OF

Countrywide Document Custody Services,
A division of Treasury Bank, N.A.
_____
Without recourse
Advisor's Mortgage, LLC

By: _____
Sharon Ellison, Assistant Secretary

PAY TO THE ORDER OF                          PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE                             WITHOUT RECOURSE
                                             COUNTRYWIDE HOME LOANS, INC.
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA              BY _____
                                                David A. Spector
BY _____             Managing Director
   LAURIE MEDER
   VICE PRESIDENT

MULTISTATE  FIXED  RATE  NOTE  -  Single  Family  -  Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT  FORM  3200  1/01
FNMA3200 (10/00)                    Page 3 of 3



**165885**

RECORDED ON
03/14/2011   02:15:53PM

DIANN GIESE
GRANT COUNTY RECORDER
ELBOW LAKE, MN
By Deputy:
HOLLY JO

After Recording Mail To:
Advisor's Mortgage, LLC
5270 West 84th Street, Suite 120
Bloomington, MN 55437

LOAN NO.: ████████        [Space Above This Line For Recording Data]

# MORTGAGE

Registration tax heron of $ 741.52 paid
Receipt No. 2820
Patricia Selvig

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **MARCH 24, 2005** together with all Riders to this document.

(B) "Borrower" is
Constance M. Westrom AND Marvin Westrom , Wife and Husband

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is  ADVISOR'S MORTGAGE, LLC

Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of           THE STATE OF MINNESOTA
Lender's address is   5270 WEST 84TH STREET STE 400
BLOOMINGTON, MN 55437

(E) "Note" means the promissory note signed by Borrower and dated **MARCH 24, 2005**
The Note states that Borrower owes Lender
**THREE HUNDRED TWENTY-TWO THOUSAND FOUR HUNDRED AND 00/100**
Dollars (U.S. $   322,400.00        ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          **APRIL 1, 2035**

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01  (A)                    Page 1 of 13

FATCO 527615
701 Xenia Avenue South
Suite 450
Golden Valley, MN  55416
ATTN· Recording Dept.



EXHIBIT B

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ Biweekly Payment Rider | ☐ V.A. Rider | |
| ☐ Other(s) [specify] | | |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01

Page 2 of 13        Initials: _____

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

<table>
<tr><td>County</td><td>of</td><td>Grant</td><td>:</td></tr>
<tr><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td><td></td></tr>
</table>

**See Attached Exhibit A**

<table>
<tr><td>which currently has the address of</td><td>26353 County Road 4</td><td></td></tr>
<tr><td></td><td>[Street]</td><td></td></tr>
<tr><td>Elbow Lake</td><td>, Minnesota</td><td>56531</td><td>("Property Address"):</td></tr>
<tr><td>[City]</td><td></td><td>[Zip Code]</td><td></td></tr>
</table>

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MINNESOTA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01                    Page 3 of 13    Initials: _____

<u>UNIFORM COVENANTS.</u>  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01

Page 4 of 13     Initials: _____

provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01          Page 5 of 13          Initials: _____

subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01

Page 8 of 13        Initials: _____

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01                    Page 7 of 13                    Initials: _____

pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01                    Page 8 of 13        Initials:

Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under.

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01                    Page 9 of 13        Initials:

the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms,

as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

MINNESOTA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3024 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS 1/01                              Page 12 of 13      Initials:

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Constance M Westrom* _____ (Seal)
                                     Constance M. Westrom                    -Borrower

_____     *Marvin Westrom by*
                                     *Constance M Westrom His Attorney in*  (Seal)
                                     Marvin Westrom  , By Constance M. Westrom  -Borrower
                                     His Attorney In Fact                    *fact*

                                     _____ (Seal)
                                                                             -Borrower

                                     _____ (Seal)
                                                                             -Borrower

──────────────── [Space Below This Line For Acknowledgment] ────────────────

**STATE OF MINNESOTA,**                       Washington            **County ss:**

    On this            day of            , 20            , before me appeared
**Constance M. Westrom AND** Constance M. Westrom, Attorney In Fact for Marvin Westrom, Husband and Wife

to me personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

```
┌─────────────────────────┐
│  KIM J KOUTZ            │      *Kim J Koutz*
│  NOTARY PUBLIC  MINNESOTA │                        - Notary Public
│ My Commission Expires Jan 31 2010 │
└─────────────────────────┘
```
My Commission expires:

This instrument was prepared by:
**Advisor's Mortgage, LLC**
**5270 West 84th Street, Suite 120**
**Bloomington, MN 55437**
**952-838-8747**

Tax statement sent to:

**MINNESOTA** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
**Form 3024 1/01**
Laser Forms Inc. (800) 446-3555
LFI #FNMA3024-MERS  1/01                 **Page 13  of 13**

File No: █████████

# EXHIBIT 'A'

That part of Government Lot 2 or the Northwest Quarter of the Southwest Quarter of Section 9, Township 129 North, Range 42 West, Grant County, Minnesota, described as follows: Beginning at the intersection of Trunk Highway No. 79 and State Aid Road No. 4; thence North 28 degrees 56 minutes East 1273.5 feet along the center line of said State Road No. 4; thence North 69 degrees 49 minutes West 63 feet to the place of beginning; thence North 69 degrees 49 minutes West 767 feet, to the waters edge; thence South 60 degrees 19 minutes East 12 feet; thence North 68 degrees 26 minutes East 38 feet; thence South 74 degrees 34 minutes East 181 feet; thence south 65 degrees 4 minutes East 85 feet; thence South 38 degrees 19 minutes East 300 feet; thence South 15 degrees 49 minutes East 161 feet; thence South 13 degrees 41 minutes 58 feet; thence South 59 degrees 11 minutes West 237 feet to the point on the waters edge; thence South 89 degrees 19 minutes East 161 feet; thence North 28 degrees 26 minutes East 250 feet; thence North 20 degrees 41 minutes East 145 feet; thence North 26 degrees 41 minutes East 233 feet to the place of beginning.
A.P.N. 15-0059-000

Initials: _____   _____          Page 1 of 1

## ASSIGNMENT OF MORTGAGE

### MORTGAGE DOCUMENT #165885 (A)

DRAFTED BY:
Wilford, Geske & Cook P.A.
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
FILE NUMBER: 022484B02


EXHIBIT C

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc., its successors and assigns through its servicing agent Advisor's Mortgage, LLC, a corporation under the laws of Delaware, does hereby sell, assign, transfer, and set over to The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-19CB, Mortgage Pass-through Certificates, Series 2005-19CB, whose address is 7105 Corporate Dr #PTX-C-35 Plano, TX 75024-4100, its successors and assigns, that certain mortgage executed by Constance M. Westrom and Marvin Westrom, wife and husband, Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., its successors and assigns through its servicing agent Advisor's Mortgage, LLC, as Mortgagee, dated March 24, 2005, filed for record in the office of the County Recorder on March 14, 2011, as Document Number 165885, Grant County, State of Minnesota, together with all right and interest in the land herein described, and does hereby covenant with the assignee, its successors and assigns that it has good right to sell, assign and transfer the same.

MIN # ███████████
MERS Phone #: 888-679-6377

Date: _____ MAY 1 6 2012 _____

Mortgage Electronic Registration Systems, Inc., its successors and assigns through its servicing agent Advisor's Mortgage, LLC

By _____

Its _____ Cecilia Rodriguez Assistant Secretary _____

## ACKNOWLEDGMENT

State of California
County of Ventura _____

On MAY 1 6 2012 before me, _____ S. Greenwald Notary Public _____,
(Insert name and title of the officer)

personally appeared _____ Cecilia Rodriguez _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ S. Greenwald _____

S. GREENWALD
Commission # 1893744
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2014

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | CHAPTER 13 CASE |
| Constance M. Westrom | CASE NO. 11-35984 |
| Debtor. | MEMORANDUM IN SUPPORT OF<br>MOTION FOR RELIEF FROM STAY |

## <u>ARGUMENT</u>

I.    CAUSE EXISTS FOR THE GRANTING OF RELIEF FROM THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. § 362(d)(1) WHERE THE INTEREST OF THIS
MOVANT IS NOT ADEQUATELY PROTECTED.

Pursuant to 11 U.S.C. § 362(g) the burden is on Debtor to prove absence of cause

and/or adequate protection.   Movant's interest in the property is not adequately protected where:

1.    As of March 23, 2012, Debtor is delinquent for monthly payments as required for

the months of December 2011 to March 2012 in the amount of $2,373.45 per month; accruing

monthly late charges; and attorney's fees and costs.

2.    Debtor has failed to make any offer of adequate protection.

Furthermore, Debtor has failed to meet its contractual obligations to make payments as

they become due after the filing of the bankruptcy petition, which failure constitutes "cause"

entitling the Movant to relief from the automatic stay under 11 U.S.C. § 362(d)(1).   A continued

failure by Debtor to maintain regular payments to Movant is sufficient cause to entitle Movant to

relief from the automatic stay.   See *In re Taylor*, 151 B.R. 646 (E.D.N.Y., 1993) and *In re*

*Davis*, 64 B.R. 358 (Bkrtcy. S.D.N.Y., 1986).

II.    THE AUTOMATIC STAY SHOULD BE MODIFIED PURSUANT TO 11 U.S.C. §
362(d)(2) WHERE (1) DEBTOR DOES NOT HAVE ANY EQUITY IN THE
PROPERTY, AND (2) THE PROPERTY IS NOT NECESSARY TO AN EFFECTIVE
REORGANIZATION.

The first requirement under § 362(d)(2) is met where the total of all the encumbrances against the property is in excess of the value of the property.   The current tax assessed value of the property is $182,500.00, subject to Movant's mortgage in excess of $297,510.18.   The property is also subject to a Junior Mortgage in favor of Bremer Bank in excess of $60,000.00. Where there exists no equity in the property that is the subject of a motion for relief from stay, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to successfully defend against the motion.   *In re Embassy Enterprises of St. Cloud,* 125 B.R. 552, 554 (Bankr. D. Minn. 1991).

## CONCLUSION

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, and where its interest in the secured property is not adequately protected.   Movant is also entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) where Debtor has no equity in the property, and where the property is not necessary to an effective reorganization.

Movant respectfully requests an order of this Court modifying the automatic stay consistent with the attached proposed Order.

Dated: July 2, 2012

**WILFORD, GESKE & COOK P.A.**


/e/ Orin J. Kipp
Orin J. Kipp, #0390438
Attorneys for Movant
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
(651) 209-3300

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                        CHAPTER 13

Constance M. Westrom                          CASE NO. 11-35984

          Debtor.                          AFFIDAVIT IN SUPPORT OF MOTION
_____               FOR RELIEF FROM AUTOMATIC STAY

      I, _David M. Santoy_, declare under penalty of perjury as follows:

    1.    I am a Assistant Vice President of Bank of America, N.A., successor by

merger to BAC Home Loans Servicing, LP ("BANA") and am authorized to sign this affidavit

on behalf of BANA, servicing agent for The Bank of New York Mellon  fka The Bank of New

York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-19CB,

Mortgage Pass-through Certificates, Series 2005-19CB ("Movant") with respect to a certain loan

(the "Loan") provided to Debtor(s), which Loan is evidenced by the Note (defined below) and

secured by the Mortgage (defined below).  This Affidavit is provided in support of the Motion

for Relief from Stay filed by Movant in this proceeding (the "Motion").

    2.    As part of my job responsibilities for BANA, I am familiar with the types of

records maintained by BANA in connection with the Loan and the procedures for creating those

types of records.  I have access to the books, records and files of BANA that pertain to the Loan

and extensions of credit given to Debtor(s) concerning the Property (defined below).

    3.    The information in this affidavit is taken from BANA's business records regarding

the Loan.  I have personal knowledge of BANA's procedures for creating these types of records.

The records are: (a) made at or near the time of the occurrence of the matters recorded by

persons with personal knowledge of the information in the business record, or from information

transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly

conducted business activities; and (c) it is the regular practice of BANA to make such records.

4.      The Debtor(s) has/have executed and delivered or is/are otherwise obligated with

respect to that certain promissory note in the original principal amount of $322,400.00 (the

"Note"). An accurate copy of the Note is attached hereto as Exhibit "A".

5.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively,

the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are

secured by the Property (as defined in the Motion). An accurate copy of the Mortgage is attached

hereto as Exhibit "B".

6.      The address of the Property is: 26353 County Road 4, Elbow Lake, Minnesota

56531. The legal description of the Property is:

> That part of Government Lot 2 or the Northwest Quarter of the Southwest Quarter of
> Section 9, Township 129 North, Range 42 West, Grant County, Minnesota, described as
> follows: Beginning at the intersection of Trunk Highway No. 79 and State Aid Road No.
> 4; thence North 28 degrees 56 minutes East 1273.5 feet along the center line of said State
> Road No. 4; thence North 69 degrees 49 minutes West 63 feet to the place of beginning;
> thence North 69 degrees 49 minutes West 767 feet, to the waters edge; thence South 60
> degrees 19 minutes East 12 feet; thence North 68 degrees 26 minutes East 38 feet; thence
> South 74 degrees 34 minutes East 181 feet; thence South 65 degrees 4 minutes East 85
> feet; thence South 38 degrees 19 minutes East 300 feet; thence South 15 degrees 49
> minutes East 161 feet; thence South 13 degrees 41 minutes 58 feet; thence South 59
> degrees 11 minutes West 237 feet to the point on the waters edge; thence South 89
> degrees 19 minutes East 161 feet; thence North 28 degrees 26 minutes East 250 feet;
> thence North 20 degrees 41 minutes East 145 feet; thence North 26 degrees 41 minutes
> East 233 feet to the place of beginning.

7.      All rights and remedies under the Mortgage have been assigned to the Movant

pursuant to that certain assignment of mortgage, an accurate copy of which is attached hereto as

Exhibit "C".

8.      As of March 23, 2012, the outstanding amount of the Obligations less any partial

payments or suspense balance is $297,510.18.

9.      The current tax-assessed value of the Property is $182,500.00.  The estimated

market value of the Property is $182,500.00.

10.      Upon information and belief, the encumbrances on the Property listed in the

Schedules or otherwise known, including but not limited to the encumbrances granted to

Movant, in order of priority are:  (i) Movant ($297,510.18); (ii) Bremer Bank ($60,000.00).

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.  Executed this __29__ day of

_____June_____, 2012.

Name: David M. Santoy

Title: Assistant Vice President

---

**THE FOREGOING INSTRUMENT WAS SWORN TO AND SUBSCRIBED** before me
personally in the State of _____California_____, County of _____Ventura_____, this 29 day of June
2012, by ___David M. Santoy___ who,

**(CHECK ONLY ONE:)**

☐ IS PERSONALLY KNOWN TO ME,

**OR**

☒ PRODUCED _Calif. Drivers License_(Type of ID Produced) AS IDENTIFICATION TO
ME AND WHO DID TAKE AN OATH.

**IN TESTIMONY WHEREOF,** I Have hereunto subscribed my name and affixed my seal of
office the day and year last above written.



Milvia L Lopez
**NOTARY PUBLIC**

(Seal)

My Commission Expires: _September 1, 2015_

MILVIA L. LOPEZ
COMM. # 1946737
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Sep. 1, 2015

# JURAT

State of California

County of **Ventura**

Subscribed and sworn to (or affirmed) before me on this **29** day of **June**,

20 **12** by **David M Santoy**,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_Milvia L. Lopez_
Signature

(Notary seal)

> MILVIA L. LOPEZ
> COMM. # 1946737
> NOTARY PUBLIC-CALIFORNIA
> LOS ANGELES COUNTY
> MY COMM. EXP. SEP. 1, 2015

## OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

**AFFIDAVIT IN SUPPORT OF MOTION FOR**
(Title or description of attached document)

**RELIEF FROM AUTOMATIC STAY**
(Title or description of attached document continued)

Number of Pages **4**   Document Date **06-29-12**

**Loan # 81684183 - Constance M Westrom**
(Additional information)

### INSTRUCTIONS FOR COMPLETING THIS FORM

*The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
   - ✍ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
   - ✍ Indicate title or type of attached document, number of pages and date. •
Securely attach this document to the signed document

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | CHAPTER 13 CASE |
| Constance M. Westrom | CASE NO. 11-35984 |
| Debtor. | UNSWORN DECLARATION FOR PROOF OF SERVICE |

Laura Francis, employed by Wilford, Geske & Cook P.A., attorneys licensed to practice law in this Court, with office address at 8425 Seasons Parkway, Suite 105, Woodbury, MN 55125-4393, declares that on July 2, 2012, I served the annexed Notice of Hearing and Motion for Relief from Stay, Memorandum in Support of Motion for Relief from Stay, Affidavit of Bank of America, N.A., and proposed Order to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing same in the post office at Woodbury, Minnesota addressed to each of them as follows:

Constance M. Westrom
101 Olive St E Apt 2
Stillwater, MN 55082-4991

Bremer Bank
P.O. Box 1000
Lake Elmo, MN 55042-1000

and delivered by e mail notification under CM/ECF on the day e-filed with the Court to each of them as follows:

Joseph A. Skokan

Jasmine Z. Keller

U.S. Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: July 2, 2012

/e/ Laura Francis
Laura Francis

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          CHAPTER 13 CASE

Constance M. Westrom                            CASE NO. 11-35984

                    Debtor.                     ORDER

_____

This case came before the court on the motion of The Bank of New York Mellon fka The

Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan

Trust 2005-19CB, Mortgage Pass-through Certificates, Series 2005-19CB, its successors and

assigns through its servicing agent Bank of America, N.A., seeking relief from the stay imposed

by 11 U.S.C. § 362.   Based on the motion and the file,

It is ordered:

1.      The movant, its assignees, and successors in interest are granted relief from the

stay imposed by 11 U.S.C. § 362 with regard to the mortgage deed dated March 24, 2005,

executed by Constance M. Westrom and Marvin Westrom, wife and husband, recorded on March

14, 2011, as Document No. 165885, covering real estate located in Grant County, Minnesota,

legally described as:

> That part of Government Lot 2 or the Northwest Quarter of the Southwest Quarter of
> Section 9, Township 129 North, Range 42 West, Grant County, Minnesota, described as
> follows: Beginning at the intersection of Trunk Highway No. 79 and State Aid Road No.
> 4; thence North 28 degrees 56 minutes East 1273.5 feet along the center line of said State
> Road No. 4; thence North 69 degrees 49 minutes West 63 feet to the place of beginning;
> thence North 69 degrees 49 minutes West 767 feet, to the waters edge; thence South 60
> degrees 19 minutes East 12 feet; thence North 68 degrees 26 minutes East 38 feet; thence
> South 74 degrees 34 minutes East 181 feet; thence South 65 degrees 4 minutes East 85
> feet; thence South 38 degrees 19 minutes East 300 feet; thence South 15 degrees 49
> minutes East 161 feet; thence South 13 degrees 41 minutes 58 feet; thence South 59
> degrees 11 minutes West 237 feet to the point on the waters edge; thence South 89
> degrees 19 minutes East 161 feet; thence North 28 degrees 26 minutes East 250 feet;
> thence North 20 degrees 41 minutes East 145 feet; thence North 26 degrees 41 minutes

East 233 feet to the place of beginning.

and may pursue its remedies under state law in connection with the mortgage deed.

2.      The movant, its assignees, and successors in interest, at its option, offer, provide

and enter into a potential forbearance agreement, loan modification, refinance agreement or other

loan workout/loss mitigation agreement.   The movant may contact the debtor via telephone or

written correspondence to offer such an agreement.   Any such agreement shall be non-recourse

unless included in a reaffirmation agreement.

3.      Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:

_____
United States Bankruptcy Judge